Russ W. Ercolani (SBN 240493)
Email:Russ@ErcolaniLawGroup.com
Melissa L. Emerson (SBN 343982)
Email: Melissa@ErcolaniLawGroup.com
ERCOLANI LAW GROUP
31225 La Baya Dr., Suite 113
Westlake Village, CA 91362
Telephone: +1 805 338 6880
Facsimile: +1 805 367 4454

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT SETSER, an individual; and BONNIE SETSER, an individual;<br><br>     Plaintiffs,<br><br>v.<br><br>KONINKLIJKE PHILIPS N.V., a Dutch corporation; PHILIPS NORTH AMERICA LLC, a Delaware Limited Liability Company; PHILIPS HOLDING USA INC., a Delaware corporation; PHILIPS RS NORTH AMERICA LLC, a Delaware Limited Liability Company; PHILIPS RS NORTH AMERICA HOLDING CORPORATION, a Delaware Corporation; and DOES 1 through 100 inclusive;<br><br>     Defendants. | CASE NO:<br><br>COMPLAINT FOR DAMAGES<br><br>1. Negligence<br>2. Strict Products Liability—*Design Defect*<br>3. Strict Products Liability—*Manufacturing Defect*<br>4. Strict Products Liability—*Failure to Warn*<br>5. Breach of Express Warranty<br>6. Breach of Implied Warranties<br>7. Fraudulent Misrepresentation<br>8. Fraud by Omission<br>9. Negligent Misrepresentation<br>10. Loss of Consortium<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Robert Setser and Bonnie Setser (collectively, "Plaintiffs"), for their complaint against Defendants Koninklijke Philips N.V. ("Royal Philips"), Philips North America LLC ("Philips NA"), Phillips Holding USA Inc. ("Philips Holding"), Philips RS North America LLC ("Philips RS"), and Philips RS North America Holding Corporation ("Philips RS Holding") (collectively, "Philips" or the "Defendants"), allege as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is based on Diversity of Citizenship and the amount in controversy is well in excess of the jurisdictional limit of $75,000.00. 28 U.S.C. § 1332(a)(1).

2.      Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b), 28 U.S.C. § 1391(c), and 18 U.S.C. § 1965, because Defendants transact business in this District, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and Plaintiff resides in this District.

3.      The Court has personal jurisdiction over Defendants because Defendants conduct substantial business in this District, and the events giving rise to Plaintiff's claims arise out of and relate to Defendants' contacts with this District. Defendants Philips NA, Philips Holding, Philips RS, and Philips RS Holding are controlled by their parent Royal Philips. Defendants' affiliations with

this District are so continuous and systematic as to render them essentially at home in the forum State. Further, Defendants have transacted business, maintained substantial contacts, purposefully targeted consumers and medical professionals for sales of its devices, and/or committed overt acts in furtherance of the unlawful acts alleged in this Complaint in this District, as well as throughout the United States. The unlawful acts of Defendants have been directed at, targeted, and have had the effect of causing injury to persons residing in, located in, or doing business in this District, as well as throughout the United States.

## THE PARTIES

4. Plaintiff Robert Setser is, and at all times herein mentioned, was, a resident of the State of California.

5. Plaintiff Bonnie Setser is, and at all times herein mentioned, was, a resident of the State of California.

6. Plaintiffs are informed and believe, and thereon allege, that Defendant Koninklijke Philips N.V. ("Royal Philips") is a Dutch multinational corporation with its principal place of business located in Amsterdam, Netherlands.

7. Plaintiffs are informed and believe, and thereon allege, that Defendant Philips North America LLC ("Philips NA") is a Delaware limited liability company

COMPLAINT FOR DAMAGES

with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141. Philips NA is a wholly owned subsidiary of Royal Philips.

8.    Plaintiffs are informed and believe, and thereon allege, that Defendant Phillips Holding USA, Inc. ("Philips Holding"), is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141. Philips Holding is a wholly owned subsidiary of Royal Philips.

9.    Plaintiffs are informed and believe, and thereon allege, that Defendant Philips RS North America LLC ("Philips RS") is a Delaware Limited Liability Company with its principal place of business located at 6501 Living Place, Pittsburgh, Pennsylvania 15206. Philips RS is a wholly owned subsidiary of Royal Philips. Philips RS was formerly operated under the business name Respironics, Inc. ("Respironics").

10.    Plaintiffs are informed and believe, and thereon allege, that Defendant Philips RS North America Holding Corporation ("Philips RS Holding") is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141. Philips RS Holding is a wholly owned subsidiary of Royal Philips.

11.    Based upon information and belief, Defendant Royal Philips is the parent company of the Philips Group of healthcare technology businesses, including

Connected Care businesses focusing on Sleep & Respiratory Care. Royal Philips holds directly or indirectly 100% of its subsidiaries Philips NA, Philips Holding, Philips RS, and Philips RS Holding.

12.     Based upon information and belief, Royal Philips controls Philips NA, Philips Holding, Philips RS, and Philips RS Holding in the manufacturing, selling, distributing, and supplying of the recalled CPAP, Bi-Level PAP, and mechanical ventilator devices.

13.     Defendants Royal Philips, Philips NA, Philips Holding, Philips RS, and Philips RS Holding shall collectively be referred to as "Philips".

14.     Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1 through 100, inclusive, and therefore sue these defendants by such fictitious names pursuant to *California Code of Civil Procedure* ("C.C.P.") §474. Plaintiffs will amend the complaint to allege their true names and capacities when ascertained.  Plaintiffs are informed and believe and thereon allege that each of the fictitiously named defendants is negligently responsible in some manner for the occurrences herein alleged, and that Plaintiffs' losses as herein alleged were proximately caused by such negligence.

//
//
//
//

COMPLAINT FOR DAMAGES

# FACTS

15.     Plaintiffs bring this action for injuries caused from the use of a Continuous Positive Airway Pressure (CPAP) machine manufactured by Philips, which contained polyester-based polyurethane sound abatement foam ("PE-PUR Foam").

16.     On April 26, 2021, Philips made a public announcement disclosing it had determined there were risks that the PE-PUR Foam used in certain CPAP, Bi-Level PAP, and mechanical ventilator devices it manufactured may degrade or off-gas under certain circumstances. On April 26, 2021, in its Quarterly Report for Q1 2021, Philips disclosed for the first time, under a section entitled "Regulatory Update," that device user reports had led to a discovery that the type of PE-PUR Foam Philips used to minimize noise in several CPAP and Bi-Level PAP respirators and mechanical ventilators posed health risks to its users.

17.     On June 14, 2021, seven weeks later, Royal Philips issued a recall in the United States of its CPAP, Bi-Level PAP, and mechanical ventilator devices containing PE-PUR Foam (the "Recalled Devices"), because Philips had determined that: (a) the PE-PUR Foam was at risk for degradation into particles that may enter the devices' pathway and be ingested or inhaled by users, and (b)

COMPLAINT FOR DAMAGES

the PE-PUR Foam may off-gas certain chemicals during operation (the "Recall Notice").

18.     Philips reported that lab analysis of the degraded foam reveals the presence of harmful chemicals, including Toluene Diamine ("TDA"), Toluene Diisocyanate ("TDI"), and Diethylene Glycol ("DEG").

19.     In its Recall Notice, Philips disclosed that the potential risks of particulate exposure to users of these devices include: irritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (e.g., kidneys and liver) and toxic carcinogenic effects. The potential risks of chemical exposure due to off-gassing of PE-PUR Foam in these devices include: headache/dizziness, irritation (eyes, nose, respiratory tract, skin), hypersensitivity, nausea/vomiting, toxic and carcinogenic effects.

20.     Philips disclosed that the absence of visible particles in the devices does not mean that PE-PUR Foam breakdown has not already begun.

21.     Philips further disclosed in its Recall Notice that these issues can result in serious injury which can be life-threatening, cause permanent impairment, and/or require medical intervention to preclude permanent impairment.

22.     Philips reported to physicians that PE-PUR Foam particles "may cause irritation and airway inflammation, and this may be particularly important for patients with underlying lung diseases or reduced cardiopulmonary reserve."

23.     Further, Philips reported that "based on lab testing and evaluations, it may be possible that these potential health risks could result in a wide range of potential patient impact, from transient potential injuries, symptoms and complications, as well as possibly serious injury which can be life threatening or cause permanent impairment or require medical intervention to preclude permanent impairment."

24.     Prior to receipt of notice of the recall, Plaintiff Robert Setser purchased a Philips Respironics DreamStation Auto CPAP device, which he used nightly from the date of purchase and continued to use.

25.     The Philips Recalled Devices include the Philips Respironics DreamStation device purchased by Plaintiff.

26.     Prior to issuing the Recall Notice, Philips received complaints regarding the presence of black debris/particles within the airpath circuit of its devices (extending from the device outlet, humidifier, tubing, and mask). Philips also received reports of headaches, upper airway irritation, cough, chest pressure and sinus infection from users of these devices.

27.     Philips recommended that patients using the recalled CPAP and Bi-Level PAP devices immediately discontinue using their devices and that patients using the recalled ventilators for life-sustaining therapy consult with their physicians regarding alternative ventilator options.

28.     Sometime in August 2021, Plaintiff Robert Setser received a notification advising him that his Philips Respironics DreamStation CPAP device was subject to a recall due to the presence of a dangerous PE-PUR Foam that could cause him to suffer from adverse health effects.

29.     On September 3, 2021, Plaintiff Robert Setser was diagnosed with oropharyngeal cancer.

30.     At no time prior to its Regulatory Update on April 26, 2021, did Philips disclose to purchasers or users of the Recalled Devices that the PE-PUR Foam contained therein may off-gas or degrade upon use. Similarly, prior to the Update, Philips did not disclose any health risks associated with use of the Recalled Devices.

31.     Defendants have not disclosed when they first discovered or received reports from users of their Sleep & Respiratory Care devices "regarding the presence of black debris/particles within the airpath circuit (extending from the device outlet, humidifier, tubing, and mask)."

- 9 -

COMPLAINT FOR DAMAGES

32.     At a minimum, as a result of user reports, Defendants were aware of the off-gassing and degradation of the PE-PUR Foam used in the Recalled Devices at some point prior to the recall yet continued to manufacture and sell the Recalled Devices with such awareness.

33.     During this period, Defendants unreasonably and unjustly profited from the manufacture and sale of the Recalled Devices and unreasonably put users of the Recalled Devices at risk of development of serious adverse health effects, including organ failure and cancer.

34.     The information described above, including the now-known health risks of Philips CPAP devices, the recall, and the medical warnings and advice issued by Philips, have rendered the Recalled Devices worthless to patients with sleep apnea and respiratory conditions.

35.     Individuals must immediately discontinue their use of the Recalled Devices or face serious health risks as grave as organ failure or cancer.

36.     If they choose to discontinue use of the Recalled Devices, they must pay for another expensive device in order to receive effective treatment for their sleep apnea and/or respiratory conditions.

37.     As a result of the health risks associated with the use of the Recalled Devices, together with Defendants' concealment of these risks from the date they

COMPLAINT FOR DAMAGES

were first reported to Defendants or discovered by Defendants through April 26, 2021, the Recalled Devices have been rendered completely worthless or, at the very least, have been substantially diminished in value.

38.     The manuals accompanying Plaintiff Robert Setser's device did not contain any language or warnings of health risks associated with use of the device, including irritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (e.g., kidneys and liver) and toxic carcinogenic effects.

39.     Had Defendants informed Plaintiff Robert Setser of these risks, he would not have purchased or used the Recalled Device.

40.     Without knowing of the health risks associated with use of the Recalled Device, Plaintiff Robert Sester used the Recalled Device regularly to treat sleep apnea.

41.     Plaintiff Robert Setser has incurred substantial expenses for medical care. In addition, Plaintiff underwent surgery, experienced painful cancer treatments, a globus sensation, voice changes, and tinnitus due to his use of the Philips' recalled machine. Since being notified of the recall, Plaintiff has experienced anxiety concerning the serious health risks he is facing from possible

- 11 -
COMPLAINT FOR DAMAGES

exposure to off-gassed or degraded PE-PUR Foam in the Recalled machines, including the machine used by Plaintiff Robert Setser.

42. Plaintiff Robert Sester seeks to recover damages based on, inter alia, Philips' negligence, products liability, breach of express warranty, breach of implied warranties, misrepresentations, and omissions, in connection with its manufacture, marketing and sales of devices containing PE-PUR Foam.

43. Plaintiff Bonnie Setser seeks to recover damages based on her loss of consortium due to her husband's injuries.

44. In addition, Plaintiff Robert Setser seeks medical monitoring damages for his use of the Philips' devices identified in this Complaint, since he is at risk of suffering from serious injury as a result of his use of the Philips' devices, including skin, nose, eye, and respiratory tract irritation, inflammatory response, headache, asthma, adverse effects to other organs, such as the kidneys and liver, and toxic carcinogenic effects.

45. As a direct and proximate result of Philips' conduct, Plaintiffs Robert Setser and Bonnie Setser have suffered injury, damage and loss.

//
//
//
//
//
//

- 12 -
COMPLAINT FOR DAMAGES

## FIRST CAUSE OF ACTION
### *Negligence*
### *(by Plaintiff ROBERT SETSER, against all Defendants and Does 1 through 100, inclusive)*

46.     Plaintiff incorporates by reference and alleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

47.     Defendants had a duty to individuals, including the Plaintiff, to use reasonable care in designing, manufacturing, marketing, labeling, packaging and selling the recalled machines, including the Recalled Devices.

48.     Defendants were negligent in failing to use reasonable care as described herein in designing and manufacturing, the recalled machines, as well as the machine that Plaintiff purchased and used. Defendants breached their aforementioned duty by:

a. Failing to design the recalled machines so as to avoid an unreasonable and increased risk of harm of cancer and other injuries in users;

b. Including in the design of the recalled machines flawed polyurethane PE-PUR sound abatement foam that could break down, flake off and/or chemicalize and infiltrate the device's air pathway while the user is sleeping, exposing them to increased and unnecessary risk of cancer as well as other injuries;

c.  Manufacturing certain Philips machines, including the recalled machines, with a specific lot and/or lots of flawed polyurethane PEP-UR sound abatement foam that could break down, flake off and/or chemicalize and infiltrate the device's air pathway while the user is sleeping, exposing them to increased and unnecessary risk of cancer as well as other injuries;

d.  Otherwise negligently or carelessly designing, manufacturing, marketing, labeling, packaging and/or selling the Recalled Devices.

49.  Defendants also negligently failed to warn or instruct the Plaintiff in the following manners:

a.  The recalled machine's flawed polyurethane PE-PUR sound abatement foam propensities to break down, flake off and/or chemicalize and infiltrate the device's air pathway while the user is sleeping, exposing them to increased and unnecessary risk of cancer as well as other injuries;

b.  The recalled machine's polyurethane PE-PUR sound abatement foam propensities to degradation, fragmentation and/or chemicalization;

COMPLAINT FOR DAMAGES

   c.  The rate and manner in which the polyurethane PE-PUR sound abatement foam would break down, flake off and/or chemicalize and infiltrate the device's air pathway while the user is sleeping;

   d.  The risk of chronic inflammation resulting from use of the recalled machines;

   e.  The risk of chronic infections resulting from the recalled machines;

   f.  The risk of cancers from exposure to the foam;

   g.  The need for corrective or revision surgery to adjust or remove cancerous tumors and/or nodules as a result of usage of the recalled machines;

   h.  The severity of complications that could arise as a result of implantation of the recalled machines;

50.   As a direct and proximate result of Defendants' negligence, Plaintiff Robert Setser has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, lost income, and other damages.

51.     WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

### SECOND CAUSE OF ACTION
### *Strict Products Liability—Design Defect*
### *(by Plaintiff ROBERT SETSER, against all Defendants and Does 1 through 100, inclusive)*

52.     Plaintiff incorporates by reference and alleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

53.     The recalled machine used by Plaintiff was not reasonably safe for its intended uses and was defective as described herein with respect to its design. As previously stated, the machine's design defects include, but are not limited to:

a. The use of polyurethane PE-PUR sound abatement foam in the recalled machines and the immune reaction that results from such material, causing adverse reactions and injuries;

b. Failing to design the recalled machines so as to avoid an unreasonable and increased risk of harm of cancer and other injuries in users;

- 16 -
COMPLAINT FOR DAMAGES

   c. Including in the design of the recalled machines flawed polyurethane PE-PUR sound abatement foam that could break down, flake off and/or chemicalize and infiltrate the device's air pathway while the user is sleeping, exposing them to increased and unnecessary risk of cancer as well as other injuries;

   d. Failing to use alternatively available sound abatement materials and/or foams in the recalled machines, such as plastic, silicone, or rubber, which would not break down, flake off and/or chemicalize and infiltrate the device's air pathway while the user is sleeping;

   e. Otherwise negligently or carelessly designing, manufacturing, marketing, labeling, packaging and/or selling the recalled machines.

54. At all times, the use of the recalled machines, as well as Plaintiff's use of the Recalled Device (and its components, such as the facemask) was at all times foreseeable and foreseen by Defendants as it was used by Plaintiff in the manner intended by Defendants.

55. The Recalled Device used by Plaintiff, was defective in its design in that it failed to perform as safely as a reasonable consumer would expect when used in an intended or reasonably foreseeable manner.

56.     The Recalled Devices, including the Recalled Device used by Plaintiff, are further defective in that the risks of danger inherent in its design outweigh the benefits, in that the gravity of danger posed by the design was great, the likelihood that such danger would cause injury was substantial, there were feasible, safer alternative designs known to Defendants at the time of manufacture, the financial costs of an improved design was minor, and there were likely no adverse consequences to the product, or to the user, that would result from an alternative design.

57.     Defendants, and each of them, knew that the Recalled Devices, including the Plaintiff's Recalled Device, and the component parts of these CPAP/BIPAP machines would be purchased and used without inspection for defects in the design of the machine or its masks/attachments.

58.     The Recalled Devices, including the Plaintiff's Recalled Device, and the component parts of these machines were defective when they left the control of each of these Defendants.

59.     As a direct and proximate result of the Recalled Devices, including Plaintiff's Recalled Device, and the aforementioned defects as described herein, Plaintiff Robert Setser has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and

will likely undergo future medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, lost income, and other damages.

60.    Defendants are strictly liable to the Plaintiff for designing, manufacturing, marketing, labeling, packaging and selling the recalled machines, including Plaintiff's Recalled Device.

61.    As a direct and proximate result of one or more of the above-stated negligent acts, Plaintiff has suffered and will continue to suffer injury of a personal and pecuniary nature, including pain and suffering, medical expenses, lost income, and disability.

62.    WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## THIRD CAUSE OF ACTION
### *Strict Products Liability—Manufacturing Defect*
### *(by Plaintiff ROBERT SETSER, against all Defendants and Does 1 through 100, inclusive)*

63.    Plaintiff incorporates by reference and alleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

64.     At all times, the use of the Recalled Devices, as well as Plaintiff's use of the Recalled Device (and its components, such as the facemask) was at all times foreseeable and foreseen by Defendants as it was used by Plaintiff in the manner intended by Defendants.

65.     The Recalled Devices were defective at the time of their manufacture, development, production, testing, inspection, endorsement, sale and distribution, and at the time they left the possession of the Defendants, in that, and not by way of limitation, the products differed from the Defendants' intended result and intended design and specifications, and from other ostensibly identical units of the same product line.

66.     Defendants, and each of them, knew or should have known of the defective nature of the recalled machines, including (among other things), that the PE-PUR foam used in the recalled machine's component parts was prone to flaking, chemicalization, disintegration, that it could enter the user's airways while they slept, and created an unreasonably high risk while in use, and would foreseeably result in injury or death to the public, purchasers, and/or consumers.

67.     The Defendants, and each of them, knew or should have known of the defective nature of the Recalled Devices, and the component parts of these CPAP/BIPAP machines, including among other things, that the PE-PUR foam

used in the recalled machine's component parts was prone to flaking, chemicalization, disintegration, that it could enter the user's airways while they slept, and created an unreasonably high risk while in use, and would foreseeably result in injury or death to the public, purchasers, and/or consumers.

68.     Specifically, the Defendants improperly designed the recalled machines by manufacturing certain Philips machines, including the recalled machines, with a specific lot and/or lots of flawed polyurethane PE-PUR sound abatement foam that could break down, flake off and/or chemicalize and infiltrate the device's air pathway while the user is sleeping, exposing them to increased and unnecessary risk of cancer, including cancer, as well as other injuries.

69.     As a direct and proximate result of one or more of the above-stated negligent acts, Plaintiff has suffered and will continue to suffer injury of a personal and pecuniary nature, including pain and suffering, medical expenses, lost income, and disability.

70.     WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

//
//

## FOURTH CAUSE OF ACTION
### *Strict Products Liability—Failure to Warn*
### *(by Plaintiff ROBERT SETSER, against all Defendants and Does 1 through 100, inclusive)*

71.     Plaintiff incorporates by reference and alleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

72.     The Recalled Devices, including the Recalled Device used by Plaintiff, were not reasonably safe for their intended uses and were defective as described herein as a matter of law due to its lack of appropriate and necessary warnings. Specifically, Defendants did not provide sufficient or adequate warnings including, but not limited to, the following:

a.  The recalled machine's flawed polyurethane PE-PUR sound abatement foam propensities to break down, flake off and/or chemicalize and infiltrate the device's air pathway while the user is sleeping, exposing them to increased and unnecessary risk of cancer, including cancer, as well as other injuries;

b.  The recalled machine's polyurethane PE-PUR sound abatement foam propensities to degradation, fragmentation and/or chemicalization;

COMPLAINT FOR DAMAGES

c. The rate and manner in which the polyurethane PE-PUR sound abatement foam would break down, flake off and/or chemicalize and infiltrate the device's air pathway while the user is sleeping;

d. The risk of chronic inflammation resulting from use of the recalled machines;

e. The risk of chronic infections resulting from the recalled machines;

f. The risk of cancers from exposure to the foam;

g. The need for corrective or revision surgery to adjust or remove cancerous tumors and/or nodules as a result of usage of the recalled machines;

h. The severity of complications that could arise as a result of implantation of the recalled machines;

73.    As a direct and proximate result of the recalled machine's aforementioned defects as described herein, Plaintiff Robert Setser has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages.

COMPLAINT FOR DAMAGES

74.     Defendants are strictly liable to the Plaintiff for designing, manufacturing marketing, labeling, packaging, and selling a defective device.

75.     WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## FIFTH CAUSE OF ACTION
### Breach of Express Warranty
### (by Plaintiff ROBERT SETSER, against all Defendants and Does 1 through 100, inclusive)

76.     Plaintiff incorporates by reference and alleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

77.     Philips marketed and sold the Recalled Device into the stream of commerce with the intent that the Recalled Device would be purchased by Plaintiff and other members of the general public.

78.     Philips expressly warranted, advertised, and represented to Plaintiff that the Recalled Device was safe and appropriate for human use.

- 24 -
COMPLAINT FOR DAMAGES

79.    Philips made these express warranties regarding the Recalled Device's quality and fitness for use in writing through its website, advertisements, and marketing materials, and on the Recalled Device's packaging and labels.

80.    These express warranties became part of the basis of the bargain that Plaintiff entered into upon purchasing the Recalled Device.

81.    Philips' advertisements, warranties, representations, and omissions regarding health risks associated with the Recalled Device, were made in connection with the sale of the Recalled Device to Plaintiff.

82.    Plaintiff relied on Philips' advertisements, warranties, representations, and omissions regarding the Recalled Device in deciding whether to purchase and use Philips' Recalled Device.

83.    The Recalled Devices, including the Recalled Device used by Plaintiff, did not conform to Philips' advertisements, warranties, representations, and omissions in that they are not safe, healthy, and appropriate for human use, and pose risks of serious injury and disease, including organ failure and cancer.

84.    Philips therefore breached its express warranties by placing the recalled machines, including the machine used by Plaintiff, into the stream of commerce and selling it to consumers, when their use posed health risks, had dangerous effects and were unsafe, rendering these products unfit for their

intended use and purpose, and unsafe and unsuitable for consumer use as marketed by Philips.

85.     These associated health effects substantially impair the use, value, and safety of the Recalled machines, and rendered the machines worthless.

86.     Philips was aware, or should have been aware, of the toxic or dangerous health effects from the use of the recalled machines, including the machine used by Plaintiff, but nowhere on the package labeling or package inserts or on Philips' websites or other marketing materials did Philips warn Plaintiff he was at risk of developing adverse health effects as a result of the dangerous PE-PUR Foam used in the recalled machines

87.     Instead, Philips concealed the dangerous health effects of the PE-PUR Foam used in the recalled machines, including the machine used by Plaintiff and deceptively represented that these products were safe, healthy, and appropriate for use.

88.     Philips thus utterly failed to ensure that the material representations they were making to consumers were true.

89.     The adverse health effects associated with use of the recalled machines, including the machine used by Plaintiff existed when they left Philips' possession or control and were sold to Plaintiff.

90.     The dangers associated with use of the recalled machines were undiscoverable by Plaintiff at the time of purchase of the Recalled Device.

91.     As manufacturers, marketers, advertisers, distributors and sellers of the Recalled Devices, Philips had exclusive knowledge and notice of the fact that the Recalled Devices did not conform to the affirmations of fact and promises.

92.     In addition, or in the alternative, to the formation of an express contract, Philips made each of the above-described representations and omissions to induce Plaintiff to rely on such representations and omissions.

93.     Philips' affirmations of fact and promises and its omissions were material, and Plaintiff reasonably relied upon such representations and omissions in purchasing and using the Recalled Device.

94.     All conditions precedent to Philips' liability for its breach of express warranty have been performed by Plaintiff.

95.     Affording Philips an opportunity to cure its breaches of written warranties would be unnecessary and futile here.

96.     Philips was placed on reasonable notice from user reports and its lab testing that the PE-PUR Foam in the Recalled Devices, including the machine used by Plaintiff was unsafe.

97.     Philips had ample opportunity either to stop using the PE-PUR Foam or to replace the PE-PUR Foam in the Recalled Devices to make them safe and healthy for use by Plaintiff but failed to do so until now.

98.     As a direct and proximate result of the recalled machines, including the machine's aforementioned defects as described herein, Plaintiff Robert Setser has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages.

99.     WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## SIXTH CAUSE OF ACTION
### *Breach of Implied Warranty of Merchantability*
### *(by Plaintiff ROBERT SETSER, against all Defendants and Does 1 through 100, inclusive)*

100.   Plaintiff incorporates by reference and alleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

101.   Philips are merchants engaging in the sale of goods to Plaintiff and members of the general public.

102.   There was a direct sale of goods from Philips to Plaintiff, creating privity between Plaintiff and Defendants.

103.   At all times mentioned herein, Philips manufactured or supplied the recalled machines, including the Recalled Device used by Plaintiff, and prior to the time of use, Philips impliedly warranted to Plaintiff that the Recalled Devices, including the machine used by Plaintiff, was of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact and omissions made on the labels and packaging, including that the machines were safe and appropriate for human use.

104.   Plaintiff relied on Philips' promises and affirmations of fact and omissions when he purchased and used the Recalled Device.

105.   Contrary to these representations and warranties, the Recalled Devices including the machine used by Plaintiff was not fit for its ordinary use and did not conform to Philips' affirmations of fact and promises and omissions because use of the Recalled Devices is accompanied by the risk of adverse health effects, which does not conform to the labels and packaging of these devices.

COMPLAINT FOR DAMAGES

106.   Philips breached its implied warranties by selling a Recalled Device, including the machine used by Plaintiff, that failed to conform to the promises or affirmations of fact made on the packaging or label, as use of each Recalled Device was accompanied by the risk of developing adverse health effects that do not conform to the packaging or label.

107.   Philips was on notice of this breach, as it was made aware of the adverse health effects accompanying use of the Recalled Devices through user reports submitted to Philips and through lab testing.

108.   Privity exists because Philips impliedly warranted to Plaintiff through the warranting, packaging, advertising, marketing, and labeling that the Recalled Devices were natural, and suitable for use to treat health conditions, and made no mention of the attendant health risks associated with use of the Recalled Devices.

109.   As a direct and proximate result of the Recalled Devices, including the aforementioned defects as described herein, Plaintiff Robert Setser has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages.

COMPLAINT FOR DAMAGES

110.   WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## SEVENTH CAUSE OF ACTION
### *Fraudulent Misrepresentation*
*(by Plaintiff ROBERT SETSER, against all Defendants and Does 1 through 100, inclusive)*

111.   Plaintiff incorporates by reference and alleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

112.   Philips failed to advise Plaintiff that the Recalled Devices, including the machine used by Plaintiff posed serious health risks to their users and Philips falsely represented to Plaintiff that the Recalled Devices were safe for human use.

113.   Philips intentionally, knowingly, and recklessly made these misrepresentations and omissions to induce Plaintiff to purchase the Recalled Devices, including the machine used by Plaintiff.

114.   Philips knew that its representations and omissions about the Recalled Devices, including the machine used by Plaintiff, were false in that the Recalled Devices contained PE-PUR Foam and thus were at risk of causing adverse health

effects to users of the Recalled Devices which does not conform to the products' labels, packaging, advertising, and statements.

115.   Philips knowingly allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff.

116.   Plaintiff did in fact rely on these omissions and misrepresentations and purchased and used a Recalled Device to his detriment.

117.   Given the deceptive manner in which Philips advertised, represented, and otherwise promoted the Recalled Devices, Plaintiff's reliance on Philips' omissions and misrepresentations was justifiable.

118.   As a direct and proximate result of the recalled machines, including the machine's aforementioned defects as described herein, Plaintiff Robert Setser has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages.

119.   WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests

compensatory damages, punitive damages, together with interest, costs of suit,

attorneys' fees, and such further relief as the Court deems equitable and just.

## EIGHTH CAUSE OF ACTION
### *Fraud by Omission*
### *(by Plaintiff ROBERT SETSER, against all Defendants and Does 1 through 100, inclusive)*

120.   Plaintiff incorporates by reference and alleges each and every one of

the allegations contained in the preceding and foregoing paragraphs of this

Complaint as if fully set forth herein.

121.   Philips concealed from and failed to disclose to Plaintiff that use of

Recalled Devices, including the machine used by Plaintiff is accompanied by a risk

of adverse health effects, which does not conform to the products' labels,

packaging, advertising, and statements.

122.   Philips was under a duty to disclose to Plaintiff the true quality,

characteristics, ingredients, and suitability of the Recalled Devices, including the

machine used by Plaintiff because:

    a.  Philips was in a superior position to know the true state of facts about

       its products;

    b.  Philips was in a superior position to know the risks associated with the

       use of, characteristics of, and suitability of the Recalled Devices; and

      c.   Philips knew that Plaintiff could not reasonably have been expected to learn or discover prior to purchasing the Recalled Device that there were misrepresentations and omissions by Philips in the packaging, labels, advertising, and websites regarding the health risks associated with use of these devices.

123.   The facts concealed or not disclosed by Philips to Plaintiff were material in that a reasonable consumer would have considered them important when deciding whether to purchase the Recalled Device.

124.   Plaintiff justifiably relied on Philips' omissions to his detriment.

125.   The detriment is evident from the true quality, characteristics, and risk associated with the use of the Recalled Devices, including the machine used by Plaintiff, which is inferior when compared to how the Recalled Devices are advertised and represented by Philips.

126.   As a direct and proximate result of the Recalled Devices, including the machine's aforementioned defects as described herein, Plaintiff Robert Setser has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss,

including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages.

127.   WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

### NINTH CAUSE OF ACTION
*Negligent Misrepresentation*
*(by Plaintiff ROBERT SETSER, against all Defendants and Does 1 through 100, inclusive)*

128.   Plaintiff incorporates by reference and alleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

129.   Philips had a duty to Plaintiff to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, distribution, and sale of the Recalled Devices, including the machine used by Plaintiff.

130.   Philips breached its duty to Plaintiff by developing, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiff that did not have the qualities, characteristics, and suitability for use as advertised by Philips and by failing to promptly remove the Recalled Devices,

including the machine used by Plaintiff from the marketplace or to take other appropriate remedial action upon becoming aware of the health risks of the Recalled Devices.

131.   Philips knew or should have known that the qualities and characteristics of the Recalled Devices, including the machine used by Plaintiff were not as advertised or suitable for their intended use and were otherwise not as warranted and represented by Philips. Specifically, Philips knew or should have known that:

   a.   The use of the Recalled Devices was accompanied by risks of adverse health effects that do not conform to the packaging and labeling;

   b.   The Recalled Devices were adulterated, or at risk of being adulterated, by the PE-PUR Foam; and

   c.   The Recalled Devices were otherwise not as warranted and represented by Philips.

132.   As a direct and proximate result of Defendants' negligence, Plaintiff Robert Setser has experienced significant mental and physical pain and suffering, has sustained permanent injury, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or

COMPLAINT FOR DAMAGES

economic loss, including, but not limited to, obligations for medical services and expenses, lost income, and other damages.

133.   WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## TENTH CAUSE OF ACTION
### *Loss of Consortium (C.C.P. § 1431.2(b)(2))*
### *(by Plaintiff BONNIE SETSER, against all Defendants and Does 1 through 100, inclusive)*

134.   Plaintiff Bonnie Setser realleges paragraphs 1 through 133 as if fully set forth herein and incorporates same by reference.

135.   Plaintiffs Robert Setser and Bonnie Setser were, at all times herein, husband and wife.

136.   Plaintiff Bonnie Setser alleges that Defendants, and each of them, are liable for the injuries suffered by Plaintiff Robert Setser as set forth herein.

137.   Prior to these injuries, Plaintiff Robert Setser was able to and did perform his duties as a spouse. After the injuries suffered from his use of the Recalled Devise and as a proximate result thereof, Plaintiff Robert Setser has been unable to perform the necessary duties of a spouse, in that he can no longer

perform the work services usually performed by him in the care, maintenance and management of the family home or any other function within the context of his marriage to Plaintiff Bonnie Setser, including but not limited to care, comfort and society, services, and support.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs pray for judgment against the Defendants, and each of them, as follows.

a. For past and future general damages on each cause of action, according to proof;

b. For past and future pain and suffering, according to proof;

c. For past and future hospital, medical, nursing care, treatment and incidental expenses, according to proof;

d. For future medical monitoring of Plaintiff Robert Setser;

e. For past and future loss of earnings and earning power, according to proof;

f. For past and future mental and emotional distress, according to proof;

g. For restitution, according to proof;

h. For punitive damages in an amount appropriate to punish and/or set an example of Defendants, or in any other way appropriate;

i. For past and future costs of suit incurred herein, and attorney's fees as may be allowed by law;

COMPLAINT FOR DAMAGES

j.  For non-economic damages including but not limited to Plaintiff Bonnie Setser's loss of her husband's love, companionship, comfort, care, assistance, protection, affection, society, moral support; and the loss of the enjoyment of sexual relations; and

k.  For such other and further relief as the Court may deem just and proper

DATE: August  31 , 2022                ERCOLANI LAW GROUP


                                       By: _____
                                           Russ W. Ercolani
                                           ERCOLANI LAW GROUP
                                           Attorney for Plaintiff,
                                           ROBERT SETSER

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial of this action.


DATE: August  31 , 2022                ERCOLANI LAW GROUP


                                       By: _____
                                           Russ W. Ercolani
                                           ERCOLANI LAW GROUP
                                           Attorney for Plaintiff,
                                           ROBERT SETSER

- 39 -
COMPLAINT FOR DAMAGES